IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BONITA D. OSISEK,               :        CIVIL ACTION
Plaintiff,                      :
                                :
        v.                      :
                                :
JO ANNE B. BARNHART,            :
Commissioner of Social Security,  :
Defendant                       :        No. 06-2141

## REPORT AND RECOMMENDATION

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                    October 30, 2006

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final

decision of the Commissioner of Social Security ("Commissioner") denying the claims of

Bonita D. Osisek ("Plaintiff") for disability insurance benefits ("DIB") under Title II of

the Social Security Act, 42 U.S.C. §§ 401-433.  For the reasons set forth below, I

recommend that the final decision of the Commissioner be vacated; and this matter be

remanded for further proceedings consistent herewith.

## I.       PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") on March 11,

2004,[1] alleging that she had been disabled since October 1, 2003, due to depression and

anxiety.  (Tr. 2-3).  After Plaintiff's application was denied initially, (Tr. 62), she

requested an administrative hearing before an Administrative Law Judge ("A.L.J.").  (Tr.

_____

[1]Plaintiff incorrectly refers to the date of filing as October 11, 2004.  See Plaintiff's Brief
in Support of Request for Review at 1.

67).  A hearing was held on October 18, 2005, during which Plaintiff and a vocational

expert ("V.E.") testified.  (Tr. 20-51).  Plaintiff's claim was denied by the A.L.J. on

November 21, 2005.  (Tr. 61).  On March 31, 2006, the Appeals Council denied

Plaintiff's request for review, making the A.L.J.'s decision the final decision of the

Commissioner.  (Tr. 4-6).  Plaintiff then filed this action for judicial review of the final

decision of the Commissioner.

## II.      Standard of Review

Under the Social Security Act, a claimant is disabled if he or she is unable to

engage in "any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to . . . last for a continuous period

of not less than twelve (12) months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.15052.

Under the medical-vocational regulations, as promulgated by the Commissioner, a five-

(5-) step sequential evaluation is to be utilized to evaluate disability claims.[2]  In pressing

----

[2]These steps are as follows:
> First, the Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, then
> the Commissioner considers in the second step whether the
> claimant has a "severe impairment" that significantly limits his
> physical or mental ability to perform basic work activities.  If the
> claimant suffers a severe impairment, the third inquiry is whether,
> based on the medical evidence, the impairment meets the criteria
> of the impairment listed in the "listing of impairments," . . .,
> which result in a presumption of disability, or whether the
> claimant retains the capacity for work.  If the impairments does
> not meet the criteria for a listed impairment, then the
> Commissioner assesses in the fourth step whether, despite the
> severe impairment, the claimant has the residual functional
> capacity to perform his past work.  If the claimant cannot perform

his or her claim, the burden is solely upon the claimant to prove the existence of a

disability.  42 U.S.C. § 423(d)(5).  A claimant satisfies this burden by showing an

inability to return to former work.  Once a showing is made, the burden of proof shifts to

the Commissioner to show that the claimant, given his or her age, education and work

experience, has the ability to perform specific jobs that exist in the economy.  Rossi v.

Califano, 602 F.2d 55, 57 (3d Cir. 1979).

The Commissioner has supplemented this sequential process for evaluating a

claimant's eligibility for benefits with additional regulations dealing specifically with

mental impairments.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); see also 20

C.F.R. § 404.1520a.  These procedures require the A.L.J. to record the pertinent signs,

symptoms, findings, functional limitations and effects of treatment contained in the case

record, in order to determine if a mental impairment exists.  20 C.F.R. § 404.1520a(b)(1).

If an impairment is found, the A.L.J. must analyze whether certain medical findings

relevant to a claimant's ability to work are present or absent.  20 C.F.R. §

404.1520a(b)(2).  The A.L.J. must then rate the degree of functional loss resulting from

the impairment in certain areas deemed essential for work.  Id.  If the mental impairment

is considered "severe," the A.L.J. must then determine if it meets a listed mental disorder.

---

his past work, then the final step is to determine whether there is
other work in the national economy that the claimant can perform.
Sykes v. Apfel, 228 F.3d 259, 262-263 (3d Cir. 2000); see also 20 C.F.R. § 404.1520.

20 C.F.R. § 404.1520a(c)(2).  If the impairment is severe, but does not reach the level of a

listed disorder, then the A.L.J. must conduct a residual functional capacity assessment.

20 C.F.R. § 404.1520a(c)(3).

Judicial review of a final decision of the Commissioner is limited.  The District

Court is bound by the findings of the Commissioner if they are supported by substantial

evidence and decided according to correct legal standards.  Allen v. Bowen, 881 F.2d 37,

39 (3d Cir. 1989); Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).  Substantial

evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable

mind might accept as adequate."  Burnett v. Apfel, 220 F.3d 112, 118 (3d Cir. 2000)

(citing Plummer, 186 F.3d at 427).  Even if the record could support a contrary

conclusion, the decision of the A.L.J. will not be overturned as long as there is substantial

evidence to support it.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d. Cir. 1986);  Smith v.

Califano, 637 F.2d 968, 970 (3d Cir. 1981).

III.   FACTS

    A.   BACKGROUND

Plaintiff was forty-eight (48) years old at the time of the A.L.J.'s decision.  (Tr.

60).  She has a high school diploma with vocational training in cosmetology, and past

relevant work as a file clerk and routing clerk.  (Tr. 60).

At her administrative hearing, Plaintiff testified that her husband passed away on

February 20, 2003, and that she has been living with her fiancé since December 2003.

4

(Tr. 22-23). She has two (2) children both over the age of eighteen (18) and two (2)

grandchildren, none of whom live with her. (Tr. 24, 27). She has not worked since

October 1, 2003, due to anxiety, depression, and inability to concentrate. (Tr. 23, 32).

Plaintiff testified that she used to be a very busy person with a lot of interests and

hobbies such as embroidery, quilting, and knitting but that she no longer has any interest

in those activities. (Tr. 36). She stated that she no longer speaks with her friends and

rarely picks up the telephone. (Tr. 34). She spends her days sitting on the patio and

leaves the house only very early in the morning or after it gets dark at night because she

does not want anyone to see her or to speak to her. (Tr. 25, 34, 41). Plaintiff testified that

she does not do any grocery shopping, does not cook due to the inability to concentrate,

and only eats junk food. (Tr. 25, 39). She also states that she is too distracted to

complete any household tasks. (Tr. 40).

Plaintiff is currently prescribed Cymbalta,[3] Lexapro,[4] and Lamictal.[5] (Tr. 43). She

testified that the medications make her feel nauseous and that after taking the medications

she feels the need to sleep. (Tr. 44).

B.      Testimony of Vocational Expert

Richard Baine testified as the Vocational Expert ("V.E.") at Plaintiff's

administrative hearing. The V.E. classified Plaintiff's past work as a file clerk as low

---

[3]Cymbalta is used to treat major depression. See www.webmd.com.
[4]Lexapro is used to treat depression and generalized anxiety disorder. See www.webmd.com.
[5]Lamictal is used to prevent or control seizures. See www.webmd.com.

level, semi-skilled work with a specific vocational preparation ("SVP")[6] of three (3).  (Tr.

46).  He further classified Plaintiff's work as a routing clerk[7] as light duty, unskilled with

an SVP of two (2).  (Tr. 46).  The V.E. testified that a hypothetical individual of

Plaintiff's age, education, and work history, capable of performing work that is low stress

in nature, confined to simple, routine, self paced, one (1) to two (2) step tasks would not

be able to do the work that Plaintiff has done in the past.  (Tr. 46).  The V.E. stated that it

would be possible for Plaintiff to perform the work of general office clerk, sorter, or

packer.[8]  (Tr. 47).

## IV.   Analysis

In following the five- (5-) step sequential evaluation process, the A.L.J. made the

following findings:

2.      [Plaintiff] has not engaged in substantial gainful activity since
        October 1, 2003 (20 CFR § 404.1520(b)).

3.      [Plaintiff] has the following severe impairment: anxiety and
        depression (20 CFR § 404.152(c)).[9]

---

[6]Specific Vocational Preparation is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  Dictionary of Occupational Titles, App. C at II.

[7]The VE cited ROUTING CLERK as 222.687-022.  Sorts bundles, boxes, or lots of articles for delivery; reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts.  Places or stacks articles in bins designated according to route, driver, or type.

[8]The V.E. did not provide job numbers from the DOT for these positions.

[9]The A.L.J. found that the above impairments impose more than minimal limitations on Plaintiff's ability to perform work-related functions.  (Tr. 58).

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5.    [Plaintiff] has the residual functional capacity to perform low stress, simple, routine, 1-2 step tasks where she may pace herself.

6.    [Plaintiff] has past relevant work experience as a file clerk (SVP of 3) and routing clerk (SVP of 2) (20 CFR § 404.1565).

****

9.    Considering [Plaintiff's] residual functional capacity, she has no transferable skills from work previously performed (20 CFR § 404.1568).

10.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that [Plaintiff] can perform (20 CFR § 404.1560(c) and 404.1566).

11.    [Plaintiff] has not been under a disability, as defined in Social Security Act, from October 1, 2003, through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 58-61).  Thus the A.L.J. reached step five (5) of the sequential evaluation and found

that Plaintiff was not disabled. (Tr. 61).

Plaintiff contends that the evidence of record demonstrates that she is disabled, and

that the A.L.J.'s finding to the contrary is not supported by substantial evidence.

Specifically, Plaintiff argues that the A.L.J. erred in (1) the assessment of the treating

psychiatrist's opinion and (2) in failing to ask the V.E. whether his testimony was

consistent with the Dictionary of Occupational Titles.

### A.     Treating Psychiatrist

In making a residual functional capacity ["R.F.C."] determination, the A.L.J. must

consider all evidence before him.   Burnett, 220 F.3d at 121.  However, a treating

physician's report is to be given special significance.  See Morales v. Apfel, 225 F.3d 310

(3d Cir. 2000); see also S.S.R. 96-2p, "Policy Interpretation Ruling: Giving Controlling

Weight to Treating Source Medical Opinions."  "A cardinal principle guiding disability

eligibility determinations is that the A.L.J. accord treating physicians' reports great

weight, especially 'when their opinions reflect expert judgment based on continuing

observation of the patient's condition over a prolonged period of time.'"  Id. at 316

(quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).

Here, the A.L.J rejected the opinion of Plaintiff's treating physician, Dr. Farag,

that Plaintiff  "has fears leaving the house, has problems with concentration and feels

hopeless; that she is unable to meet the competitive standards of unskilled work; and that

she presents marked restrictions of activities of daily living, marked difficulties in

maintaining social functioning, marked deficiencies of concentration, and four of more

episodes of decompensation".  (Tr. 59-60).  The A.L.J. stated that Dr. Farag's medical

assessment was not "supported by or consistent with treatment records."  (Tr. 59).  The

A.L.J. noted that the treating psychiatrist saw Plaintiff only once every two (2) months for

a period of fifteen (15) minutes, mainly to manage Plaintiff's medication.  (Tr. 59).  The

A.L.J. further noted that Plaintiff "attends psychotherapy sporadically - five (5) times in

2004, and approximately once every two months in 2005." (Tr. 59).  The A.L.J.

continued:

>if [Plaintiff] were as dysfunctional as described by Dr. Farag, he has
>not deemed it necessary to recommend more intensive treatment and
>has limited his intervention to 15 minutes of medication maintenance
>every two months (not monthly as he said in Exhibit 7F).

(Tr. 60).  Further, the A.L.J. noted that Dr. Farag misstated the frequency of his treatment

of Plaintiff, presumably to bolster the credibility of his overly restrictive assessment.

I find that the A.L.J. misinterpreted this aspect of the medical record.  Plaintiff first

saw her treating physician on December 15, 2003.  (Tr. 140-142).  Plaintiff then saw Dr.

Farag seven (7) times in 2004 and every month in 2005 leading up to the hearing.  (Tr.

161-178).  Consequently, as Dr. Farag's evaluation of Plaintiff is based on a continuing

observation of Plaintiff's condition over a prolonged period of time, this evaluation is

entitled to greater weight than is accorded it by the A.L.J.  Morales. 225 F.3d at 316.

Plaintiff also argues that the A.L.J. erroneously relied upon the opinion of John

Gavazzi, Psy.D., the state agency psychologist who reviewed the evidence of record.  Dr.

Gazazzi found that "the medical evidence establishes medically determinable

impairments of Major Depressive Disorder and Anxiety Disorder."  (Tr. 146).  The doctor

also stated that "the claimant's ability to understand and remember complex or detailed

instructions is limited, however, she would be expected to understand and remember

simple one and two step instructions" and that "she can perform simple, routine,

repetitive work in a stable environment."  (Tr. 146).  Dr. Gavazzi concluded that

9

Plaintiff's "impairments do not preclude [her] from meeting the basic mental demands of competitive work on a sustained basis." Id.

I agree that the A.L.J.'s reliance upon the state agency psychologist is misplaced. Importantly, I note that Dr Gavazzi completed his evaluation on May 24, 2004, based upon a review of four (4) months of treatment records, while Dr. Farag's evaluation of June 15, 2005, was based upon thirteen (13) months of treatment conducted, *by him*, over a nineteen (19) month relationship.  As a result, I find this aspect of the A.L.J.'s opinion is not supported by substantial evidence.  Morales, 225 F.3d at 320 (it is well established that the opinions of a doctor who never examined a patient 'have less probative force as a general matter, than they would have had if the doctor had treated or examined him") (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)).

Because I find the A.L.J. based his rejection of Plaintiff's treating psychiatrist on an incorrect reading of the treatment records, and that the A.L.J. erroneously relied upon the opinion of the state agency examiner, I recommend that the case be remanded for the purpose of re-evaluating Plaintiff's mental status.

B.      **Vocational Expert**

Plaintiff also argues that the A.L.J. erred in failing to ask the V.E. whether his testimony was consistent with the Dictionary of Occupational Titles.  Social Security Ruling 00-4p prescribes guidelines for treating V.E. occupational testimony in conjunction with the information contained in the DOT.   SSR 00-4p, Social Security

Disability Claims, Practice and Procedure, Supplement, Aug, 2004.  This ruling imposes

upon the A.L.J. an "affirmative responsibility" to identify and obtain a reasonable

explanation of any conflicts between a V.E.'s testimony regarding the requirements of a

specific job and the information provided by the DOT.  The language of the ruling is

mandatory not discretionary.  See Id.

     If a conflict arises, the A.L.J. must obtain an explanation for the conflict before

relying upon the V.E.'s testimony to support a decision that the claimant is not disabled.

The explanation must be on the record and the A.L.J. must explain how the conflict was

resolved.[10]  Burns, 312 F.3d at127.  However, an unexplained inconsistency between the

V.E.'s testimony and the DOT is not per se fatal to the A.L.J.'s determination as long as

substantial evidence exists in the record to support the A.L.J.'s finding.  Rutherford, 399

F.2d at 557.  Thus, despite an unresolved conflict, the A.L.J.'s decision will be affirmed if

there is substantial evidence to support it.

     The A.L.J. presented the V.E. with a hypothetical individual of the Plaintiff's age,

education, and past work history.  (Tr. 46).  The A.L.J. further asked the V.E. to assume

that this individual is capable of performing work that is low stress in nature, confined to

---

[10]The Responsibility To Ask About Conflicts.  When a VE or VS provides evidence
about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to
ask about any possible conflict between that VE or VS evidence and information provided in the
DOT.  In these situations, the adjudicator will: Ask the VE or VS if the evidence he or she has
provided conflicts with information provided in DOT; and if the VE's or VS's evidence appears
to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent
conflict." SSR 00-4p, 2000 WL 1898704, at *3-4.

simple, routine, self paced, one (1) to two (2) step tasks.  (Tr. 46).  The A.L.J. then asked

if this person would  be capable of performing the work Plaintiff has done in the past.

(Tr. 46).  The V.E. testified that this person would not be able to do the work that Plaintiff

has done in the past.  (Tr. 46-47).  He further testified that "even the routing clerk, which

is unskilled," is a job that could not be performed by the hypothetical person.  (Tr. 46).

The V.E. was then asked if there were other jobs that could be performed within

these limitations.  The V.E. testified that within these limitations a person could perform

the job of general office clerk, sorter, or packer.  (Tr. 47).  The V.E. did not provide the

DOT codes for the jobs he identified.

Plaintiff contends that the A.L.J. limited her to simple work that requires only one

(1) to two (2) step tasks, yet the jobs identified by the V.E. require an ability to

understand and carry out detailed instructions.  Additionally, Plaintiff contends that the

SVP of the jobs cited by the V.E. are equal to or greater than the SVP of Plaintiff's

previous relevant work experience.[11]  Consequently, Plaintiff argues that this is in direct

contradiction to the V.E.'s prior testimony that "considering [Plaintiff's] residual

functional capacity, [Plaintiff] is unable to return to any of her prior jobs."  (Tr. 60).

Plaintiff further argues that the A.L.J. failed to elicit a reasonable explanation for the

unresolved conflict between the DOT and the V.E.'s testimony and therefore, the A.L.J.

erroneously relied upon the V.E.'s testimony.

---

[11]Although the VE did not provide job numbers from the DOT for the jobs he identified
both Plaintiff and Defendant supply their own differing job numbers.

The V.E. provided DOT numbers and descriptions of Plaintiff's prior jobs.  (Tr.

46).  He testified that Plaintiff's previous work as a file clerk (DOT 206.387-034) is low

level, light, semi-skilled with an SVP of 3.  (Tr. 46).  He further testified that Plaintiff's

job of routing clerk (DOT 222.687-022) is unskilled, light, with an SVP of 2 (two), a

reasoning level of two (2).  (Tr. 46).  The V.E. then testified that a similarly situated

person would not be capable of doing the work that Plaintiff has done in the past.  In

other words, according to the testimony of the V.E., Plaintiff would be limited to jobs

with lesser requirements than that of routing clerk.  The V.E., without providing DOT

numbers, then suggested that Plaintiff would be capable of performing the job of general

office clerk, sorter, and packer.  (Tr. 46).

According to the DOT, the job of general office clerk (209.562-010) has an SVP

of three (3) which entails "over one (1) month and up to and including three (3)

months...to learn the techniques, acquire the information, and develop the facility needed

for average performance."  See DOT App. C.  It also has a reasoning level of three (3)

which requires an individual to "apply commonsense understanding to carry out

instructions furnished in written, oral, or diagrammatic form [and]...[deal] with problems

involving several concrete variables in or from standardized situations."  See Id.

The job of sorter (209.687-022) also has an SVP of three (3) and a reasoning level

of two (2) which requires an individual "to [a]pply commonsense but uninvolved written

or oral instructions...[d]eal with problems involving a few concrete variables in or from

standardized situations."  Id.

The job of packer (920.587-018) has an SVP of two (2) which requires "anything beyond a short demonstration up to and including one (1) month...to learn the techniques, acquire the information, and develop the facility needed for average performance," a reasoning level of two (2), and a strength level of M which requires "exerting twenty (20) to fifty (50) pounds of force...ten (10) to twenty five (25) pounds of force frequently...and/or up to ten (10) pounds of force constantly...[and] physical demand requirements are in excess of those for Light Work."  Id.

I find that there is a conflict between the V.E.'s testimony and the DOT.  All of the positions suggested by the V.E. have requirements that are equal to or greater than positions that Plaintiff has held in the past and as the V.E. testified that Plaintiff would not be able to perform work that she had done in the past a conflict has been created. Moreover, the A.L.J. did not obtain a reasonable explanation on the record regarding the conflict; nor did the A.L.J. explain how the conflict was resolved.  As a result, I conclude that the A.L.J.'s finding that there are a significant number of jobs in the national economy that Plaintiff could perform is not based on substantial evidence.  Therefore, I recommend that, upon remand, the A.L.J. obtain additional, clarifying testimony from a V.E.

Accordingly, I make the following:

## **RECOMMENDATION**

AND NOW, this       day of October, 2006, it is RESPECTFULLY

RECOMMENDED that Plaintiff's motion for summary judgment (request for review) be

GRANTED, IN PART;  Defendant's motion for summary judgment (request for review)

be DENIED;  the decision of the Commissioner be VACATED;  and the case be

REMANDED to the Commissioner for further proceedings in accordance herewith.


                                                    s/Peter B. Scuderi
                                                    PETER B. SCUDERI
                                                    UNITED STATES MAGISTRATE
JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BONITA OSISEK | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | No. 06-2141 |

## **O R D E R**

AND NOW, this     day of                , 200   , upon careful consideration of the

Report and Recommendation filed by United States Magistrate Judge Peter B. Scuderi,

and upon independent review of the Cross Motions for Summary Judgement (captioned

as Request for Review) filed by the parties, it is hereby ORDERED that:

1.    The Report and Recommendation is APPROVED and ADOPTED.

2.    Plaintiff's Motion for Summary Judgment (Request for Review) is GRANTED IN PART.

3.    Defendant's Motion for Summary Judgment (Request for Review) is DENIED.

4.    The decision of the Commissioner which denied Supplemental Security Income is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance herewith.

BY THE COURT:

_____

_____

JOHN R. PADOVA, J.

17